UNITED STATES of America, Plaintiff,

v.

**Severino CRUZ–HERNANDEZ, Defendants.**

No. 93–14013–CR.

United States District Court, S.D. Florida.

Sept. 10, 1993.

Peter Birch, Public Defender, Federal Public Defender's Office, West Palm Beach, FL, for Severino Cruz–Hernandez.

William B. Michael, Jr., United States Attorney's Office, Fort Pierce, FL, Roberto Martinez, United States Attorney's Office, Miami, FL, for U.S.

### ORDER ADOPTING AND APPROVING REPORT AND RECOMMENDATION OF MAGISTRATE

RYSKAMP, District Judge.

THIS CAUSE came before the court on the defendant's objections to the magistrate's report and recommendation and the court having reviewed the report, the defendant's objections and the government's response, finds the amended report and recommendation of August 27, 1993 should be approved.

IT IS THEREFORE ORDERED that the amended report and recommendation, dated August 27, 1993 of Magistrate Judge Ann E. Vitunac is hereby ADOPTED AND APPROVED.

DONE and ORDERED.

### *AMENDED REPORT AND RECOMMENDATION*

VITUNAC, United States Magistrate Judge.

THIS CAUSE is before the Court *sua sponte* upon review of the objections filed by both the government and the defendant with respect to this Court's initial Report and Recommendation (DE 25) in SEVERINO CRUZ–HERNANDEZ.

This Court **RE–ADOPTS** in full its factual findings from its initial Report and Recommendation.

With respect to this Court's legal conclusions in its original Report and Recommendation, this Court now **VACATES** that portion of its Report and Recommendation recommending suppression of the evidence and statements made by the defendant, SEVERINO CRUZ–HERNANDEZ. This Court confesses error and agrees with the government that it incorrectly applied the wrong standard in determining the necessary requirements for a Border Patrol Agent to effect a roving border stop. This Court confused the constitutional requirements for a stop as opposed to the constitutional requirements for a search and seizure. The government correctly points out that the *Jasinski* case deals with the right of agents to search as opposed to the right of agents to stop vehicles suspected of containing illegal aliens. See *Jasinski v. Adams and United States Border Patrol,* 781 F.2d 843 (11th Cir.1986).

This Court reverses itself and finds that probable cause was not necessary to stop the vehicle being driven by the defendant, SEVERINO CRUZ–HERNANDEZ. This Court has already found that Senior Border Patrol Officer Matthew Zetts had reasonable suspicion to stop the vehicle in question. Once he stopped that vehicle and began questioning the defendant, the surrounding facts and circumstances, as spelled out in this Court's prior Report and Recommendation, gave rise to probable cause to both arrest the defendant and search him and the vehicle.

Because there was reasonable suspicion to initially stop the defendant's vehicle and that initial stop then yielded probable cause for the search of the defendant and seizure of the illegal I–55 card, this Court finds that the Motion to Suppress should be **DENIED.**

This Court **RECOMMENDS** to the District Court that its original findings of fact be **ADOPTED** by the District Court; however, it **RECOMMENDS** to the District Court that the Motion to Suppress Evidence be **DENIED.**

**DONE and SUBMITTED** this 27th day of August, 1993, at West Palm Beach in the Northern Division of the Southern District of Florida.

### *REPORT AND RECOMMENDATION*

THIS CAUSE is before the Court on Order of Reference from United States District Court Judge Kenneth L. Ryskamp and pursuant to Administrative Order 93–69 providing for this Magistrate Judge to hear matters for the Ft. Pierce Magistrate Judge in his absence.

Before the Court is the defendant's, SEVERINO CRUZ–HERNANDEZ' Motion to Suppress Evidence. This Court held an evidentiary hearing and heard argument on the same on August 3, 1993, and the matter is now ripe for review.

## DEFENDANT'S WRITTEN MOTION

Defendant alleges in his Motion to Suppress Evidence that United States Border Patrol Officer Matthew Zetts stopped the defendant's vehicle on April 23, 1993 in Fort Pierce, Florida. Defendant, SEVERINO CRUZ–HERNANDEZ, alleges that Agent Zetts stopped the vehicle because "it looked like" a vehicle used by illegal aliens. Defendant, SEVERINO CRUZ–HERNANDEZ, alleges that the agent had noted no traffic offenses and was not aware of specific articulable facts which would warrant suspicion that the vehicle contained illegal aliens. The defendant alleges that this stop of his vehicle was contrary to the protections guaranteed by the Fourth Amendment to the Constitution and prays that the evidence (a contraband immigration card) seized from the defendant be suppressed.

## GOVERNMENT'S WRITTEN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The government argues that Agent Zetts' initial stop of the defendant was to conduct "an immigration stop". The government alleges that based on Zetts' prior experience and his observations on the day in question that he had reasonable suspicion to stop the vehicle in question. The government argues that the "roving Border Patrol" procedures used by Agent Zetts are constitutionally sufficient, pursuant to *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

## EVIDENTIARY HEARING

The government called as its witness at the Motion to Suppress Special Agent Matthew Zetts, Senior Border Patrol Agent with Immigration and Naturalization Service (INS). Agent Zetts testified that on April 23, 1993, he was in his marked Border Patrol car wearing a uniform, badge and name plate. Border Patrol trainee Ron Kruger was in the car with him. Agent Zetts was parked in a gas station lot at the corner of Orange Avenue and 25th Street in Ft. Pierce, Florida. It was 12:35 p.m. That particular location is approximately five miles from the eastern shore of Florida. The area is described as a lower income housing area with trailers and various businesses. Agent Zetts testified that he has worked this area twice before with the Ft. Pierce Police Department in an effort to find illegal aliens. He has made hundreds of arrests in this area of undocumented aliens. He testified that the INS office has received numerous complaints from citizens about illegal aliens in the area. The I–9 Corporation is located in this area and is a corporation which prepares cards for aliens. This corporation has made reports of illegal aliens to Agent Zetts. Agent Zetts also testified that the ABC Trailer Court is located approximately three-quarters of a mile from 25th Street and is an area highly concentrated with illegal aliens.

Agent Zetts testified as he sat in his patrol car, he was observing traffic in the area looking for those he suspected to be illegal aliens. His attention was drawn to a 1980 Dodge extended-passenger van which was heading west on Orange Avenue. According to Agent Zetts, the driver looked at him and then turned south on 25th Street. Zetts testified that the driver was nervous and averted Zetts' scrutiny by quickly turning his head to look away from Zetts, with his eyes then fixed straight ahead of him. According to Agent Zetts, the defendant was barely moving his van as he made the turn, but then rapidly accelerated up to the speed limit. Agent Zetts noted that the driver of the van appeared to be of Mexican descent and was wearing what are commonly referred to as work clothes or field clothes. There was also a passenger in the van who appeared to be of Mexican descent, but the passenger did not attempt to avoid the gaze of Agent Zetts. Agent Zetts noted that the van had out-of-state tags and that it was of the size, type and weight van commonly used for carrying aliens.

Agent Zetts testified that when he pulled in behind the defendant's vehicle, the defendant, SEVERINO CRUZ–HERNANDEZ, accelerated and then made the turn described above. Agent Zetts turned on his blue lights and stopped the van.

According to Agent Zetts, he asked the defendant his name and nationality. At this time, the defendant got out of his truck and

reached in and pulled out his wallet and opened it. Agent Zetts testified that he observed in the defendant's wallet a counterfeit I-55 document. This document was described by the government as a "two miler". Agent Zetts testified that a "two miler" is a document whose attempted authenticity is so poor that it is able to be spotted two miles away. Agent Zetts testified that the document in question was a "two miler" because the laminate was obviously counterfeit, the background of poor quality, the picture was not fixed properly on the document, the Department of Justice seal was poorly done, the color was wrong on the reverse side of the document, and the border of the United States was improperly drawn on the card. The defendant was read his rights in Spanish, acknowledged that he understood them, and admitted that he had bought the document for $200 in Seville, Florida and a false Social Security card for $25.

Agent Zetts testified that he picked this area and time of day to sit at this particular location because this was the time of day when most of the illegal immigrants were returning to the fields after having come into town for lunch.

On cross examination by the defendant, Agent Zetts admitted that he had no information about the defendant specifically before stopping him. His basis for this stop was that he had articulable suspicions that the defendant was an illegal alien based on his appearance, the fact that he averted Agent Zetts' gaze, the time of day, the proximity to the "border", and the appearance of the van.

### DISCUSSION

Both the defendant and the government have cited *United States v. Brignoni–Ponce,* supra, as authority for the proposition that the stop and subsequent seizure supports their respective positions. In *Brignoni–Ponce,* the Supreme Court has found a valid public interest in preventing illegal entry of aliens at the Mexican border. At the time that case was decided in 1975, INS statistics showed as many as twelve million aliens illegally in the United States. *Brignoni,* 422 U.S. at 878, 95 S.Ct. at 2578. This public

interest was weighed by the Court against an individual's liberty interference that results when an officer stops an automobile and questions its occupants by a roving patrol. In *Brignoni–Ponce,* the Court found that because of the limited nature of the intrusion, stops of the sort described in *Brignoni–Ponce* of a short duration for the purpose of merely ascertaining identity and citizenship can be justified on facts that do not amount to the probable cause required for an arrest. *Id.* at 880, 95 S.Ct. at 2579. Thus, the Court held:

> In this case as well, because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. *Brignoni* at 881, 95 S.Ct. at 2580.

This Court finds from the record before it that Special Agent Matthew Zetts had a reasonable suspicion for his roving patrol stop. But the inquiry does not stop there. Contrary to the assertions of counsel, the Eleventh Circuit has spoken on this issue since *Brignoni–Ponce* and has given guidance in its application for this Circuit.

In *Jasinski v. Adams and United States Border Patrol,* 781 F.2d 843 (11th Cir.1986), the Eleventh Circuit provides us with guidance with respect to the applicable law for "border searches".

> The constitutionality of a particular search and seizure by Border Patrol agents depends in large part on the context in which it occurs. Legal standards developed in this area reflect due consideration of both the government's need to police border crossings and the individual's right to privacy in his person and his motor vehicle. See, e.g. *United States v. Martinez–Fuerte,* 428 U.S. 543, 546, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni–Ponce,* 422 U.S. 873, 880, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). As the individual's privacy in-

terest escalates, so too does the government's burden to justify its intrusion therein.

The Eleventh Circuit then summarized for us the applicable standards for the principal categories of border patrol search and seizure.

The first category of search and seizure occurs at the border or the "functional equivalent of the border" where "there is a reasonable certainty that the object or person searched has just crossed the border, there has been no time or opportunity for the object to have changed materially since the time of crossing, and the search is conducted at the earliest possible point after the border is crossed." *United States v. Garcia,* 672 F.2d [1349] at 1363–64 (11th Cir.1982). If these conditions obtain, the search and seizure require neither a warrant nor any level of individualized suspicion. Here, the government's need to police the border, as soon as practicable, clearly outweighs the individual interests and privacy. (citations omitted)

A second class of activity may be termed "extended border searches," occurring somewhere other than the earliest point after crossing the border, but still "with [the Border Patrol's] reasonable certainty that a border crossing has occurred and that conditions have remained unchanged from the crossing until the search." The lapse of time from crossing to search, however, raises a greater privacy interest than that involved in the border or functional equivalence cases. Thus, Border Patrols conducting extended border searches must have reasonable suspicion to search without warrants.

Another class of search and seizure occurs at permanent checkpoints "relatively near" the border. Unlike the previous categories, checkpoint searches do not require a showing that the particular item or person searched has actually crossed the border. Rather, checkpoints are premised on the fact that the patrols somewhat removed from the border are, in some cases, more effective at policing border crossings than stops at the actual border.... Permissible search and seizure is more re-

stricted in this context than any other. As travelers proceed farther into the interior, away from the border, their justified expectation of privacy escalates. See *Garcia,* supra at 1365 (referring to "the resumed expectations of privacy that generally accompanies one's assimilation into the mainstream of domestic activities"). Thus, the scope, duration and location of checkpoint search and seizure must be circumscribed to insure that travelers' rights to "free passage without interruption" are only minimally affected.... Border Patrol agents are authorized to stop motorists without any individualized suspicion for the limited purpose of checking citizenship. Agents may ask questions, request proof of citizenship, and conduct a purely visual (plain view) inspection of the vehicle to check for concealed aliens. Further "inspection" constitutes a search and thus requires probable cause. *Jasinski* at 846, 847.

The government does not argue nor is there any evidence before the Court that this is a checkpoint stop. Neither is this a border or functional equivalent of the border stop. To be justified, this search must fall within the second class of activity termed extended border searches. An extended border search is valid where the stop is made somewhere other than the earliest point after crossing the border, but still with the Border Patrol's reasonable certainty that the border crossing has occurred and that conditions have remained unchanged from the crossing until the search. See *United States v. Garcia,* 672 F.2d 1349 at 1367 (11th Cir.1982). The lesser seizure standard of reasonable suspicion is available in these cases because of the fact that the Border Patrol reasonably believes that the border crossing has recently occurred. Comparing the language of *Jasinski* to the case at bar, it becomes obvious that the stop and seizure by Agent Zetts does not fall within the definition of an extended border search. Indeed, it is not the government's contention that the border was recently crossed. The government specifically argued that its belief was that the illegal alien was merely returning from his lunch to work in the fields at the time he was stopped and thus he was already "assimilated into the

community." Such a stop must be made upon a finding of probable cause and not upon the lessened standard of reasonable suspicion where the agent does not suspect a recent border crossing.

Though it appears that it would be perfectly lawful for the Border Patrol to set up checkpoints in this area to attempt to locate illegal aliens, the stop in the case at bar was not based on that alternative. This Court finds that though Special Agent Zetts in fact had articulable suspicion to believe that the defendant was an illegal alien at the time he stopped the car, he lacked probable cause to stop the car. The defendant's Motion to Suppress must therefore be granted.

This Court **RECOMMENDS** to the District Court to grant the defendant's Motion to Suppress in this case, suppressing the illegal I–55 document.

**DONE and SUBMITTED** this 13th day of August, 1993, at West Palm Beach in the Northern Division of the Southern District of Florida.